**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ESTATE OF JIM LAMONT IRVING, DECEASED,<br><br>Plaintiff<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant | Case No.: 2:25-cv-00304-APG-DJA<br><br>**Order (1) Denying Plaintiff's Motion for Summary Judgment, (2) Denying Defendant's Motion for Summary Judgment, (3) Granting Defendant's Motion for Leave to File, and (4) Denying Plaintiff's Motion to Strike**<br><br>[ECF Nos. 22, 23, 28, 30] |

Jim Lamont Irving, a United States Postal Service employee, died on October 23, 2022. ECF Nos. 22 at 3; 22-2 at 2.[1] He had a life insurance policy under the Federal Employees Group Life Insurance Act (FEGLI). *See* ECF Nos. 22 at 2; 23 at 1. Metropolitan Life Insurance (MetLife) is the third-party administrator who administered Irving's policy. *See* ECF Nos. 22-1 at 2; 22-3 at 3. Irving did not designate a beneficiary for the policy.[2] *See* ECF Nos. 22-3 at 3; 22-9 at 3.

Irving's father, Reverend Jimmie Irving, filed a claim under the policy with MetLife in December 2022. ECF No. 22-1. The Reverend wrote "N/A NONE" under the section regarding Irving's marriages, but Irving's death certificate at the time read "Divorced." *Id.* at 2, 6. In February 2023, MetLife wrote to the Reverend identifying that discrepancy and requiring a "signed statement advising how many times the insured was married in total," and if Irving "was in fact never married[, MetLife] will need the death certificate amended." ECF No. 22-3 at 3.

---

[1] The Estate asserts, and MetLife does not dispute, that Irving was a postal employee. The death certificate also lists his employment as the U.S. Postal Service. ECF No. 22-2 at 2.

[2] Irving designated his uncle as a beneficiary for an earlier version of the policy, but MetLife denied the uncle's claim because he was not a beneficiary on the current version of the policy. *See* ECF No. 22-9 at 3, 8.

MetLife notified the Reverend that if it did "not receive the requested information[, it would] be unable to issue payment of the FEGLI benefits." *Id.*

The Reverend petitioned the Clark County District Court to revise Irving's death certificate to read "single" instead of "divorced" and declared under penalty of perjury that Irving had never been married. ECF No. 22-4 at 1-7, 14. The court did not amend the death certificate, but approved a report and recommendation that gave the Reverend authority to investigate information about assets in Irving's estate. *See* ECF No. 22-5 at 4, 6-8. In February 2024, the Reverend faxed MetLife's claims department and said that he "attached the Court Order that [he] received allowing [him] to amend [his] son's death certificate to reflect that [Irving] was single." ECF No. 22-6 at 7. He included the order approving the report and recommendation (but not the underlying report and recommendation) and his sworn affidavit to the Office of Vital Records and Statistics that Irving had never been married. *Id.* at 8-9. Despite not receiving an amended death certificate or the full report and recommendation order from the Clark County District Court that did not, in fact, approve the amendment, MetLife paid Irving's FEGLI benefits to the Reverend in February 2024. *See id.* at 6 (phone record verifying that the Reverend received the check).

Pamela Irving, the decedent's wife and Co-Special Administrator of his estate, called MetLife in March 2024 and told it that she was Irving's spouse. ECF Nos. 22-7 at 2; 22-8 at 4. MetLife informed her that Irving's claim was "closed and paid." ECF No. 22-7 at 2. In October 2024, one of the Co-Special Administrators of Irving's Estate filed a claim with MetLife for death benefits on Pamela's behalf with an amended death certificate that showed Irving was married. ECF No. 1-11 at 4-9. MetLife informed Pamela's counsel that it was denying her claim because it had already paid the claim "in good faith" under 5 U.S.C. § 8705(a) to Irving's father,

who had filed a claim within a year of Irving's death where no other person higher in the order of precedence had filed a claim. ECF No. 22-8 at 4-5.

The Estate moved for the probate court to interplead the benefits that MetLife had already paid to the Reverend, and MetLife removed the motion to this federal court.[3] *See* ECF Nos. 1; 1-2. The Estate and MetLife filed cross motions for summary judgment. MetLife filed a notice of supplemental authority, which the Estate moves to strike, so MetLife moves for leave to file it. I deny both parties' motions for summary judgment because there is a genuine issue of material fact as to whether the Reverend filed, and MetLife paid, a valid claim. I grant MetLife's motion for leave to file supplemental authority, and I deny the Estate's motion to strike.

## I. I DENY BOTH MOTIONS FOR SUMMARY JUDGMENT.

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and

[3] MetLife paid $418,000 to the Reverend, $17,398 of which he has already put into a trust account. ECF No. 1-2 at 7. Therefore, the Estate seeks to interplead the remaining $400,602. *Id.*

reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

A. I deny MetLife's motion for summary judgment.

Under 5 U.S.C. § 8705(a), "the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence . . . ." As relevant here, the widow is second, the parents are fourth, and the estate is fifth. *Id.* "If, within 1 year after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence . . . payment may be made in the order of precedence as if the person had predeceased the employee." 5 U.S.C. § 8705(b). That "payment bars recovery by any other person." *Id.*

MetLife argues that it properly paid the Reverend's valid claim under § 8705(a). It argues that the Reverend, as Irving's father, is higher in the order of precedence than the Estate, and that neither the Estate nor Pamela made a claim within one year of Irving's death. ECF No. 23 at 5-6, n.2. It also contends that its decision is subject to review under an arbitrary and capricious standard, and its decision was neither. *Id*. at 4; ECF No. 24 at 2. The Estate argues that the Reverend did not submit a valid claim because his claim was factually incorrect in asserting that Irving had never been married, and it was not corrected by an amended death certificate despite MetLife requiring it.

MetLife has not met its burden to show that, as a matter of law, it should be held to an arbitrary and capricious standard in determining whether a claim is valid. The statute and its implementing regulations do not define a "valid claim" and do not set MetLife's standard of review for its determination of a valid claim. *See* 8 U.S.C. § 8701; 5 C.F.R. § 870.101. MetLife

cites *Finney v. Metropolitan Life Insurance Company* to argue that an arbitrary and capricious review standard applies. *Finney* held that under that decedent's insurance policy, MetLife's "decision about a claimant's entitlement to benefits 'is to be given full force and effect, unless it can be shown that the determination was arbitrary and capricious.'" 164 F.4th 1362, 1365 (11th Cir. 2026) (quoting the policy). However, *Finney* does not state that all FEGLI insurance policies contain this language or that this is the universal standard for third-party administrators in FEGLI cases. And MetLife does not provide Irving's insurance policy to confirm that the same language governs his policy. Therefore, MetLife has not shown that it should be held to an arbitrary and capricious standard in determining a claimant's entitlement to benefits in this case.

Even if Irving's policy did contain that standard, there is a genuine issue of material fact as to whether MetLife acted in an arbitrary and capricious manner when it required the Reverend to obtain an amended death certificate yet paid out his claim without receiving it. Further, MetLife did not require the Reverend to produce the report and recommendation that he said allowed him to amend the death certificate to verify that it had done so. MetLife argues that Irving's marital status could only have been single or divorced and that it had no reason to believe there was a living spouse. But it does not explain why it initially required this discrepancy to be resolved before paying the claim and why it later waived that requirement.

MetLife also argues that Pamela's claim was submitted over two years after Irving's death, so it does not qualify for benefits under § 8705(c). That statute states:

> [i]f, within 2 years after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence . . . and . . . the administrative office established by the company concerned . . . has [not] received notice that such a claim will be made, payment may be made to the claimant who in the judgment of the Office is equitably entitled thereto.

However, Pamela called MetLife in March 2024, within 2 years of Irving's death, and said she was Irving's spouse. ECF No. 22-7. Therefore, MetLife may have received notice that another claim would be made within two years of Irving's death. And the Estate argues that Pamela's claim was made within two years, though the date is contested. *See* ECF No. 1-11 at 2 (dated October 11, 2024, before two years of death, but crossed out and replaced with October 24, 2024, after two years of death). Therefore, MetLife has not met its burden to show that there is no genuine issue of material fact as to whether the Reverend's claim was valid. I therefore deny its motion for summary judgment.

B. <u>I deny the Estate's motion for summary judgment.</u>

The Estate argues that FEGLI does not have a provision that claims may be determined "in good faith" as MetLife said in its letter to Pamela's counsel. ECF No. 22 at 16; 22-8 at 2, 4-5. MetLife argues that a good faith standard arises from the arbitrary and capricious standard as discussed above.

The Estate likewise has not presented Irving's policy, so it does not meet its burden to show that no such review standard applies. Additionally, a reasonable fact finder could conclude that MetLife appropriately paid the Reverend despite the discrepancies in his claim because (1) no other claimant who had priority before him made a claim within one year of death, so statutorily any such claimant is treated as having pre-deceased the Reverend, (2) payment to the Reverend barred recovery by anyone else under the statute, (3) the Reverend had sworn that Irving had not been married, and (4) Pamela's claim was untimely under the two-year rule. Accordingly, there is a genuine issue of material fact as to whether that standard was in Irving's insurance policy and whether MetLife met that standard if it was.

The Estate also argues that the probate court has exclusive jurisdiction to determine claimants' identities and relationships to the decedent and where they fit in the order of precedence under FEGLI because FEGLI does not provide for that determination. The Estate does not cite to any law for this proposition. It also argues that MetLife invoked the probate court's jurisdiction by requiring the Reverend to modify Irving's death certificate. But MetLife responds that it did not require the Reverend to petition the probate court, and he could have accomplished this through the funeral director or coroner under Nevada Administrative Code § 440.023(1). ECF No. 24 at 3-4. The Reverend's independent choice to petition the probate court does not constitute MetLife's consent to or invocation of the probate court's jurisdiction.

Under 5 U.S.C. § 8709(d)(1), "[t]he provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State . . . ." Therefore, state law determined by the probate court does not govern payments under FEGLI. The individual insurance policies do. And neither party has produced Irving's policy.

Ultimately, the Estate argues that MetLife should not have paid the claim to the Reverend because he did not submit a valid claim. There is a genuine issue of material fact as to whether the Reverend's claim was valid. Therefore, I deny the Estate's motion for summary judgment.

## II. CONCLUSION

I THEREFORE ORDER that the Estate's motion for summary judgment **(ECF No. 22) is DENIED**.

I FURTHER ORDER that MetLife's motion for summary judgement **(ECF No. 23) is DENIED**.

I FURTHER ORDER that the Estate's motion to strike **(ECF No. 28) is DENIED**.

I FURTHER ORDER that MetLife's motion for leave to file a supplemental notice of authority **(ECF No. 30) is GRANTED**.

DATED this 26th day of August, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE